T. C. TANKE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10118. Promulgated February 29, 1928.

*D. B. Priest, Esq.*, for the petitioner.
*R. H. Ritterbush, Esq.*, for the respondent.

1112

OPINION.

MILLIKEN: All the facts were stipulated and our findings of fact are in exact accord with the stipulation.

Since the stipulation presents no fact with reference to respondent's contention relative to reduction of invested capital by reason of unpaid income and profits taxes, we accordingly have no facts upon which to base a decision.

In its petition, petitioner alleges that it paid cash in the amount of $40,000 for the trade name, good will and leasehold of T. C. Tanke. This allegation is denied and all we have before us are the facts as stipulated by the parties. It is stipulated that on February 20, 1919, the date of petitioner's organization, T. C. Tanke sold to petitioner "all its assets, including cash, accounts receivable, merchandise, good will, trade name, lease on business premises, customers' lists and all other property owned by it, and received therefor capital stock of the par value of $160,000 and cash in the amount of $40,000." There is nothing in the stipulation which indicates that the sum of $40,000 was paid for good will, trade name and lease, or that such assets had any value, much less that they cost T. C. Tanke that amount or any amount whatever. On the other hand, it is stipulated that the net worth of the assets sold by Eugene Tanke to petitioner on February 20, 1919, was $159,336.32 or less than the par value of the stock issued therefor. It is true that it is further stipulated that the stock received by Eugene Tanke was worth on the date of organization, $91.24 a share. An analysis of the facts as stipulated shows that this amount is computed by dividing the total amount paid by McCormack, $50,000, by the total number of shares purchased by him, to wit, 548. Multiplying the total number of shares issued, 2,000, by this value, it appears that the total assets acquired by petitioner from Eugene Tanke were probably worth $182,480, or $22,480 in excess of the par value of the stock issued to him.

Conceding for the purpose of this opinion that the assets acquired by petitioner from T. C. Tanke were worth $182,480, we are confronted with the question, How much of this amount should be included in invested capital by petitioner? It is at once apparent that the sum of $40,000, which was paid for stock by McCormack, was on the same day paid to Eugene Tanke in part payment for the assets of T. C. Tanke. It is further to be noted that it is stipulated that the purchases by McCormack of 400 shares from the corporation and of 148 shares from Eugene Tanke constituted a single transaction, that is, that McCormack in fact purchased 548 shares from Eugene Tanke, using the corporation as a conduit for the payment of the purchase price of 400 shares. All this occurred on the same day and as part of the plan by which petitioner acquired the assets and business of T. C. Tanke. At the end of that day, petitioner had issued 2,000 shares of its stock and all it had to represent this issue was the assets and business of T. C. Tanke. To put it in a few words, petitioner acquired the assets and business of T. C. Tanke in return for 2,000 shares of its capital stock. The cash payments were in fact transactions between Eugene Tanke and McCormack. The petitioner played the part only of a stakeholder.

At the beginning of the day, Eugene Tanke owned T. C. Tanke and at the end of the day he owned 1,452 out of a total of 2,000 shares of stock issued by petitioner, and the only assets owned by petitioner were those which had belonged to T. C. Tanke. These facts bring this transaction squarely within the provisions of section 331 of the Revenue Acts of 1918 and 1921. The intangibles of T. C. Tanke can be given no greater value in computing the invested capital of petitioner than in computing the invested capital of T. C. Tanke, and since it is not shown that these intangibles cost T. C. Tanke anything of value, they can not be included in petitioner's invested capital. Cf. *Appeal of Conrad & Co.*, 3 B. T. A. 692.

The fact that Eugene Tanke made taxable gain on the transfer of the assets of T. C. Tanke to petitioner has no bearing on the question of what was petitioner's invested capital. Invested capital is a purely statutory concept. Cf. *LaBelle Iron Works* v. *United States*, 256 U. S. 377; 3 Am. Fed. Tax Rep. 3114. Thus, if Eugene Tanke had sold the good will of T. C. Tanke to a corporation in which he did not retain a 50 per cent interest, he would have been taxable on his gain as in this case, but the corporation could have included such intangibles in its invested capital, whatever may have been their value (subject to certain other limitations) to the extent of only 25 per cent of the par value of its outstanding capital stock. So here he was taxable on the gain arising from his sale to petitioner, but the

extent to which the assets so conveyed may be included in petitioner's invested capital is controlled by section 331.

Reviewed by the Board.

*Judgment will be entered for the respondent.*